UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SKILLZ PLATFORM INC.,
a Delaware corporation,

       Plaintiff,

             -against-

VOODOO SAS, a foreign corporation;
ESPORT NEWCO SAS, a foreign
corporation; and ESPORT NEWCO US
CORP., a Delaware corporation,

       Defendants.

Civil Action No.: 24 Civ. 04991

Hon. Vernon S. Broderick

**PLAINTIFF SKILLZ PLATFORM INC.'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
AND, IN THE ALTERNATIVE, TO STRIKE THE GAMBLING ALLEGATIONS**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT .................................................................................1

II.  FACTUAL BACKGROUND ...................................................................................3

III. THE COURT HAS PERSONAL JURISDICTION OVER VOODOO SAS. ..........................5

   A.  The Court Has Specific Personal Jurisdiction Over Voodoo SAS. ....................................5

   B.  The Court Has General Personal Jurisdiction Over Voodoo SAS. .....................................9

   C.  The Court Has Personal Jurisdiction Over Voodoo SAS Under an Alter Ego or
       Agency Theory. ....................................................................................................10

   D.  In the Alternative, the Court May Exercise Personal Jurisdiction Over Voodoo
       SAS Pursuant to Federal Rule of Civil Procedure 4(k)(2). ...............................................11

   E.  At a Minimum, Jurisdictional Discovery Is Warranted. ...............................................12

IV.  THE AMENDED COMPLAINT STATES A CLAIM FOR FALSE ADVERTISING AND
     UNFAIR BUSINESS PRACTICES. ......................................................................12

   A.  The Amended Complaint Sufficiently Alleges False Advertising Under Section
       43(a) of the Lanham Act. ....................................................................................13

   1.  The AC alleges Voodoo's statements are false and misleading. .....................................13

   2.  The AC alleges Voodoo's false advertising has injured Skillz. ......................................16

       a)  Skillz has adequately alleged injury in the form of diverted customers and
           lost market share. ...........................................................................................17

       b)  Skillz has adequately alleged injury in the form of lost sales from
           customers exiting the market. .............................................................................20

       c)  Skillz's injuries directly flow from Voodoo's false advertising. ...........................21

   B.  The Amended Complaint Sufficiently Pleads a Violation of N.Y. GBL § 349. ...............22

V.   THE COURT SHOULD DENY VOODOO'S MOTION TO STRIKE. .................................24

VI.  CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3B Med. Inc. v. SoClean, Inc.*,
  857 F. App'x 28 (2d Cir. 2021) ...........................................................................21

*A.I. Trade Fin., Inc. v. Petra Bank*,
  989 F.2d 76 (2d Cir. 1993)....................................................................................5

*Al Thani v. Hanke*,
  2021 WL 1895033 (S.D.N.Y. May 11, 2021) ..................................................7, 21

*Am. Girl, LLC v. Zembrka*,
  118 F.4th 271 (2d Cir. 2024) .................................................................................6

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016)...................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................12

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
  510 F. Supp. 3d 108 (S.D.N.Y. 2020)...................................................................11

*Beyond 79, LLC v. Express Gold Cash, Inc.*,
  2020 WL 7352545 (W.D.N.Y. Dec. 15, 2020)................................................17, 18

*Brady v. Anker Innovations Ltd.*,
  2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) ...........................................................6

*Britt v. Elm City Communities*,
  2018 WL 3574866 (D. Conn. July 24, 2018) .......................................................25

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*,
  935 F. Supp. 2d 615 (S.D.N.Y. 2013).....................................................................9

*Casper Sleep, Inc. v. Nectar Brand LLC*,
  2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020)................................................18, 19

*Chanel, Inc. v. RealReal, Inc.*,
  449 F. Supp. 3d 422 (S.D.N.Y. 2020)...................................................................22

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
  2015 WL 4002468 (S.D.N.Y. July 1, 2015), *aff'd*, 843 F.3d 48 (2d Cir. 2016)...............18, 21

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
    843 F.3d 48 (2d Cir. 2016).................................................................................13

*City of Almaty v. Ablyazov*,
    278 F. Supp. 3d 776 (S.D.N.Y. 2017)...........................................................10, 12

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...........................................................................................9

*DeLuca v. AccessIT Grp., Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)................................................................14

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
    2016 WL 79992 (S.D.N.Y. Jan. 6, 2016) .....................................................19, 20

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
    377 F. Supp. 3d 337 (S.D.N.Y.) , *on reconsideration*, 394 F. Supp. 3d 368
    (S.D.N.Y. 2019)...............................................................................................19

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)..................................................................................5

*Dularidze v. Turk Hava Yallario A.O.*,
    2024 WL 3567332 (S.D.N.Y. July 28, 2024) .....................................................12

*Erickson v. Pardus*,
    551 U.S. 89 (2007)...........................................................................................12

*Frompovicz v. Niagara Bottling, LLC*,
    313 F. Supp. 3d 603 (E.D. Penn. 2018) ............................................................22

*Gen. Elec. Cap. Corp. v. Titan Aviation, LLC*,
    2007 WL 107752 (S.D.N.Y. Jan. 16, 2007) .......................................................5

*George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co.*,
    2021 WL 168930 (S.D.N.Y. Jan. 18, 2021) .....................................................12

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)............................................................................5, 8

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
    2013 WL 3943267 (S.D.N.Y. July 31, 2013) ...................................................24

*HSH Nordbank AG N.Y. Branch v. St.*,
    2012 WL 2921875 (S.D.N.Y. July 18, 2012) .....................................................8

*John Wiley & Sons, Inc. v. Swancoat*,
    2009 WL 2486048 (S.D.N.Y. Aug. 14, 2009).....................................................8

ii

*Kernan v. Kurz-Hastings, Inc.*,
  175 F.3d 236 (2d Cir. 1999)...............................................................................7

*LaChapelle v. Torres*,
  1 F.Supp.3d 163 (S.D.N.Y. 2014) .................................................................7, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).............................................................................17, 21, 22

*Love v. West*,
  2021 WL 431210 (S.D.N.Y. Feb. 8, 2021)...........................................................7

*Lynch v. Southampton Animal Shelter Found. Inc.*,
  278 F.R.D. 55 (E.D.N.Y. 2011).........................................................................25

*Mfg. Tech., Inc. v. Kroger Co.*,
  2006 WL 3714445 (S.D.N.Y. Dec. 13, 2006) .......................................................7

*Milkovich v. Lorain J. Co.*,
  497 U.S. 1 (1990)............................................................................................16

*Murray Space Shoe Corp. v. F.T.C.*,
  304 F.2d 270 (2d Cir. 1962)..............................................................................15

*Naked Cowboy v. CBS*,
  844 F. Supp. 2d 510 (S.D.N.Y. 2012)..................................................................23

*In re Nat. Gas Commodity Litig.*,
  337 F. Supp. 2d 498 (S.D.N.Y. 2004)..................................................................17

*Newman Cap. LLC v. Priv. Cap. Grp., Inc.*,
  2024 WL 2115311 (S.D.N.Y. May 10, 2024) ....................................................8, 11

*Olson v. Major League Baseball*,
  29 F.4th 59 (2d Cir. 2022) ...............................................................................15

*In re Platinum & Palladium Antitrust Litig.*,
  61 F.4th 242 (2d Cir. 2023) ..............................................................................10

*Procter & Gamble Co. v. Ultreo, Inc.*,
  574 F. Supp. 2d 339 (S.D.N.Y. 2008)..................................................................13

*Ramchandani v. Sani*,
  844 F. Supp. 2d 365 (S.D.N.Y. 2012)..................................................................19

*Red Ball Interior Demolition Corp. v. Palmadessa*,
  1996 WL 159066 (S.D.N.Y. Apr. 5, 1996)...........................................................13

*RSM Prod. Corp. v. Fridman*,
　　643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ....................... 24

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*,
　　624 F.3d 123 (2d Cir. 2010) ............................................................................................ 11

*Skillz Platform Inc., v. AviaGames Inc.*,
　　No. 21 Civ. 02436 (N.D. Cal. Nov. 6, 2023), ECF No. 386 .................................................. 25

*Skillz Platform Inc., v. AviaGames Inc.*,
　　No. 21 Civ. 02436 (N.D. Cal. Nov. 27, 2023), ECF No. 521 ................................................ 23

*Skillz Platform Inc. v. Papaya Gaming, Ltd*,
　　No. 24 Civ. 1646, 2024 WL 3526853 (S.D.N.Y. July 23, 2024) ................................... *passim*

*Spin Master Ltd. v. 158*,
　　463 F. Supp. 3d 348, 363 (S.D.N.Y. 2020) ........................................................................... 9

*SUEZ Water N.Y., Inc. v. E.I. du Pont de Nemours & Co.*,
　　578 F. Supp. 3d 511 (S.D.N.Y. 2022) .................................................................................... 5

*Thomas H. v. Paul B.*,
　　942 N.Y.S.2d 437 (2012) ................................................................................................... 16

*Tiffany (NJ) Inc. v. eBay Inc.*,
　　600 F.3d 93 (2d Cir. 2010) ................................................................................................ 13

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
　　497 F.3d 144 (2d Cir. 2007) .............................................................................................. 13

*Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*,
　　2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ...................................................................... 25

*United States v. DiCristina*,
　　726 F.3d 92 (2d Cir. 2013) ................................................................................................ 16

*White v. Cuomo*,
　　38 N.Y.3d 209 (2022) ................................................................................................. 15, 16

**Statutes**

18 U.S.C. § 1955 ...................................................................................................................... 16

N.Y. PENAL LAW § 225.00 ........................................................................................................ 24

**Other Authorities**

Complaint, *Kelly-Starkebaum v. Papaya Gaming Ltd.*,
　　No. 24 Civ. 02310 (S.D.N.Y. Mar. 27, 2024), ECF No. 1 ..................................................... 24

Complaint, *Pandolfi v. AviaGames, Inc.*,
  No. 23 Civ. 05971 (N.D. Cal. Nov. 17, 2023), ECF No. 1 ....................................................24

Complaint, *Skillz Platform Inc. v. Papaya Gaming, Ltd*,
  No. 24 Civ. 1646 (S.D.N.Y. Mar. 4, 2024), ECF No. 1 ..........................................................13

*Zero-Sum Game*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-
  webster.com/dictionary/zero-sum%20game ..........................................................................18

Plaintiff Skillz Platform Inc. ("Skillz") respectfully submits this Opposition to Defendants' Voodoo SAS, Esport Newco SAS, and Esport Newco US Corp. (collectively, "Voodoo" or "Defendants") Motion to Dismiss the First Amended Complaint ("Amended Complaint" or "AC") and, in the Alternative, to Strike the Gambling Allegations (ECF No. 62) ("Motion" or "Mot.").

## I.    <u>PRELIMINARY STATEMENT</u>

This case will expose a serious, ongoing fraud exploiting U.S. players of Voodoo's mobile cash games such as Blitz Win Cash, whereby Voodoo secretly uses bots to manipulate the outcome of their games and determine the rate at which players win or lose. *See, e.g.*, AC ¶¶ 137–41. The Amended Complaint describes, *inter alia*, that Voodoo manipulates the results of its tournaments to place players in 2nd or 3rd place spots no matter their performance and encourage them to keep playing by winning *just enough*; that former Voodoo employees have confirmed its use of bots; and that players have relied on Voodoo's false representations about its use of bots. *Id.*; *see also id.* ¶¶144–46. The fact that Voodoo nevertheless advertises its games as "fair," "skill-based," and that "with no bots allowed, you'll play against real players," flies in the face of the Lanham Act's prohibition of false advertising and New York's prohibition of deceptive business practices. As a result of Voodoo's lies to consumers and unfair conduct, Skillz—which does not use bots in its own, similar skill-based cash games—has seen reduced downloads and lost customers and revenue—harms that are continuing. *Id.* ¶¶ 142, 177, 183–84.

As an initial matter, in moving to dismiss the Amended Complaint, Voodoo claims the Court lacks jurisdiction over its parent entity, Voodoo SAS, which is, not coincidentally, the public face of Defendants' web of corporate entities. But, as detailed herein, Skillz's extensive allegations and exhibits demonstrate, for instance, that Voodoo SAS offers its applications such as Blitz Win Cash to New Yorkers, including through its website; that Blitz Win Cash's U.S. operations are based in New York; that there are players of Voodoo SAS's games in this District;

and that Voodoo SAS has directed advertisements for Blitz Win Cash to New York consumers, including TikTok videos filmed in Times Square. *See, e.g.*, AC ¶¶ 54–61. The Court plainly can exercise personal jurisdiction over Voodoo SAS based on any number of theories, from long arm jurisdiction to an alter ego or agency theory of jurisdiction.

On the merits, Voodoo makes the brazen choice not to even acknowledge Judge Denise L. Cote's decision, issued just a few months ago, denying a motion to dismiss a parallel case brought by Skillz against another leading company in the mobile gaming space, Papaya Gaming. *Skillz Platform Inc. v. Papaya Gaming*, *Ltd et al.*, No. 24 Civ. 1646, 2024 WL 3526853 (S.D.N.Y. July 23, 2024) Declaration of Alvina Pillai ("Pillai Decl.") Ex. A. Skillz's allegations of false advertisement and unfair business practices against Papaya are akin to those asserted against Voodoo here—including that Papaya falsely advertises its games as fair and skill-based when it secretly uses bots. In denying Papaya's motion to dismiss, Judge Cote rejected Papaya's arguments that such advertisements were not actionable, holding that Papaya's "references to 'players', 'individuals', 'winners', 'fair' and 'skill-based'" may be "found by a jury to imply that Papaya's games of competition are conducted among human players only and not among humans and bots." *See id*. at *3.

Voodoo provides no reason, nor could it, for this Court to depart from Judge Cote's decision, especially as the allegations against Voodoo are, in some ways, even more damning. *See, e.g.*, AC ¶ 2 (directly promising, for instance, that players will play against "real opponents only" and there are "[n]o bots allowed!"). Judge Cote also held that Skillz adequately alleged "Skillz has lost players to Papaya because of Papaya's unfair competition" based on allegations that are substantively identical to (if less specific than) those made here, including that Skillz has lost market share and revenue on account of Papaya's false advertising and misconduct. *See Papaya*

*Gaming*, 2024 WL 3526853, at * 3; AC ¶¶ 142, 177, 181–84.  Judge Cote's decision, along with other, prior authority, dooms each of Voodoo's Rule 12(b)(6) arguments.

Finally, Voodoo's request to strike certain allegations about the implications of Voodoo's misconduct—that its applications amount to an unregulated and illegal gambling operation—fails for the simple reason that those allegations are the hard truth at the core of this case.  For the reasons explained below, Voodoo's Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Skillz is a mobile gaming platform founded in October 2012 in Boston, Massachusetts. AC ¶ 70.  Skillz revolutionized the mobile gaming industry by developing groundbreaking technology that enabled mobile game players to compete and profit from their skill and dedication in head-to-head competitions against other human users with similar skill levels.  *Id.* ¶¶ 71, 85–87. Skillz does not use, operate, or enable computers or artificial competitors, *i.e.*, "bots," to compete in its mobile skill-based cash games.  *Id.* ¶ 94.

Defendants Voodoo SAS, Esport Newco SAS, and Esport Newco US Corp. jointly promote, operate, and own the Blitz Win Cash application, which is available for free download on the Apple App Store and the Google Play Store.  *Id.* ¶¶ 16–17, 101.  Voodoo offers multiplayer tournaments that enable users to compete for higher value cash prizes than if they were competing one-on-one.  *Id.* ¶ 110.  To be approved by financial institutions that process users' payments as well as be listed in the Apple App Store, Voodoo is required to submit legal opinion letters regarding the legality of its games, including representations that its games are skill-based, do not constitute illegal gambling, and that it does not have a financial interest in who wins or loses the cash tournaments it hosts.  *Id.* ¶¶ 171–72.

Voodoo advertises that its games are fair, its users compete against other similarly-skilled players, and "outright states that its competitors are all 'real players'—not 'bots.'"  *Id.* ¶ 116.

These advertisements, made on its website, social media, application itself, and in response to user reviews, are all false. *Id.* ¶¶ 172–77. Through its use of bots, Voodoo manipulates the outcome of its tournaments such that Voodoo takes as much of the players' entry fees as possible and keeps players engaged by letting them win just enough. *Id*. ¶¶ 137–38. Moreover, Voodoo's games directly compete for users and prospective users with the games available on Skillz's platform, *id*. ¶ 99, and users do not typically switch back and forth between Skillz and Voodoo games due to loyalty, in-game rewards, and accolades, *id*. ¶ 105. As a result of Voodoo's conduct, Skillz has lost revenue, market share, and profits, and the consuming public is harmed in the form of deception, confusion, and its participation (unwittingly) in illegal gambling. *Id.* ¶¶ 177, 199–201.

Along with its subsidiaries, the parent entity Voodoo SAS heavily advertises Blitz Win Cash to consumers in New York. *Id.* ¶ 54. For instance, in 2022, Blitz Win Cash advertisements were plastered on jumbotrons in Times Square touting, "Play Games Win Cash!" and "Turn commuting into a side hustle[.]" AC ¶¶ 18, 56–58. Voodoo SAS targets consumers in New York by portraying its advertisements in high traffic areas, like Times Square, New York City subways, and train stations, and recording TikTok promotional videos in the heart of Times Square. *Id.* ¶¶ 56–59. Voodoo SAS goes as far as to state "Blitz Win Cash is taking over NYC with billboards in Times Square and all over the city!" *Id.* ¶ 58. Voodoo SAS ratifies and reposts these advertisements, and its interactive website also solicits business and employees from residents of New York. *Id.* ¶¶ 23–27, 58, 61. Moreover, Voodoo SAS's website allows users to download Blitz Win Cash in New York, and its social media platform identifies users based in this District. AC ¶ 61 n.35; *see also* Pillai Decl. ¶ 3. Voodoo SAS purports to compel users to arbitration in "New York City for U.S. residents[.]" *See* AC ¶ 61 n.34.

III.    **THE COURT HAS PERSONAL JURISDICTION OVER VOODOO SAS.**

When addressing personal jurisdiction, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (Rule 12(b)(2) motion "assumes the truth of the plaintiff's factual allegations"). At this stage, the plaintiff "can satisfy [its] burden by making allegations sufficient to establish a prima facie case for the exercise of jurisdiction." *Gen. Elec. Cap. Corp. v. Titan Aviation, LLC*, 2007 WL 107752, at *3 (S.D.N.Y. Jan. 16, 2007).

Only Defendant Voodoo SAS contests personal jurisdiction. Skillz has made more than a sufficient *prima facie* showing of personal jurisdiction over Voodoo SAS pursuant to (a) New York's long arm statute, CPLR § 302; (b) New York's general jurisdiction statute, CPLR § 301; (c) an alter ego or conspiracy jurisdiction theory of personal jurisdiction; and (d) Federal Rule of Civil Procedure 4(k)(2).

A.    **The Court Has Specific Personal Jurisdiction Over Voodoo SAS.**

*First*, the Court has specific personal jurisdiction over Voodoo SAS under CPLR § 302(a)(1) because it transacts business in New York through its highly-interactive website and gaming applications, which it owns, develops, promotes, falsely advertises, and which are used by and marketed to New Yorkers. *See* AC ¶¶ 16–21. "Section 302 'is a single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (citation omitted). For purposes of CPLR § 302(a)(1), whether a claim arises from a New York business transaction is a "relatively permissive" inquiry. *SUEZ Water N.Y., Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 528 (S.D.N.Y. 2022) (citation omitted).

The Amended Complaint alleges that Voodoo SAS transacts extensive business in New York, including through its website, Voodoo.io, as well as its applications that are available for download in New York. *See, e.g.*, AC ¶ 61 (describing that Voodoo solicits business from the residents in this District, has customers in this District, has employees based in New York, and solicits New York-based employees via job postings); *id.* ¶¶ 54–60 (describing Blitz Win Cash advertisements directed to New York customers, including a post by Voodoo SAS of its Times Square jumbotron advertisement and a Blitz Win Cash TikTok advertisement filmed in New York City); *id.* ¶¶ 23–27 (showing Voodoo SAS's website features links to sign up, log in, and download Blitz Win Cash); *id.* ¶ 60 (describing a Blitz Win Cash player meet up organized in New York by Defendants); *see also* Pillai Decl. ¶¶ 3–7 (describing download of Blitz Win Cash via Voodoo SAS's website and cash games played while in New York).[1]  Furthermore, Voodoo SAS purports to compel arbitration in New York City for any disputes with U.S. players of its applications. *See* AC ¶ 61 n.34 (providing also that Blitz Win Cash can be played in New York but not all states).

Skillz's false advertising and New York state consumer protection claims plainly "arise out of" Voodoo SAS's transaction of business in New York, including because it is undisputed that there are Voodoo SAS players and customers in this District. AC ¶¶ 177, 204; *Am. Girl*, 118 F.4th at 278; *Brady v. Anker Innovations Ltd.*, 2020 WL 158760, at *5 (S.D.N.Y. Jan. 13, 2020) (having "no trouble" finding claims arose from New York business activity where defendants allegedly deceived consumers about its products, "which were advertised on and sold through . . . internet sources that ultimately reached New York state.").

---

[1]  The Second Circuit's recent ruling in *American Girl, LLC v. Zembrka*, is instructive here:  successfully placing orders on a website for a product to be shipped to New York can confer specific personal jurisdiction on a defendant. *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 278 (2d Cir. 2024) ("Section 302(a)(1) doesn't require a completed sale.  It only requires a transaction.").  Downloading and making real cash payments on application are such transactions.

*Second*, the Court has specific personal jurisdiction over Voodoo SAS under CPLR § 302(a)(2) because Voodoo SAS—jointly or through its affiliates, Defendants Esport Newco SAS and Esport Newco US Corp.—have offered and advertised Blitz Win Cash specifically in New York, as evidenced by videos by Defendants in Times Square and in the New York City subway. AC ¶¶ 56–59; 154–58; *see also id.* ¶ 60 (describing a "meet up" organized by Defendants for players in Brooklyn); *Love v. West*, 2021 WL 431210, at *3 (S.D.N.Y. Feb. 8, 2021); *LaChapelle v. Torres*, 1 F.Supp.3d 163, 169 (S.D.N.Y. 2014) (in-state acts of an agent can be attributed to out-of-state defendant to obtain personal jurisdiction). Even Voodoo's declarant stated that Voodoo SAS has been aware of and supported Blitz Win Cash's advertising campaigns. Longueville Decl. ¶¶ 30–31. Indeed, Voodoo SAS recently posted on LinkedIn that "Blitz Win Cash is taking over NYC with billboards in Times Square and all over the city! ***Our*** gaming competition app. takes our mobile games to the next level[.]" *Id.* ¶ 58 (emphasis added); *see also id.* (Voodoo SAS employee promoting the advertisement in a LinkedIn post).[2]

Due process is certainly satisfied, as Voodoo SAS "purposefully established 'minimum contacts' in the forum by 'purposefully direct[ing] [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Al Thani v. Hanke*, 2021 WL 1895033, at *8 (S.D.N.Y. May 11, 2021). Voodoo SAS has more than sufficient minimum contacts in New York due to its purposefully directing activities at New Yorkers via its numerous advertisements and distribution to New York customers through its website. AC

---

[2] To the extent Voodoo SAS's activities are deemed to have taken place outside New York, its conduct would subject Voodoo SAS to personal jurisdiction under CPLR § 302(a)(3) as well. *See* AC ¶¶ 181–84. It is beyond argument that Voodoo SAS has engaged in a "persistent course of conduct" in New York under CPL.R. § 302(a)(3) by reaching, targeting, advertising to, and selling products to New York customers. And Voodoo should have expected its unfair business practices and false advertising to have consequences in New York, where it heavily advertised and has customers. *See, e.g.*, *Mfg. Tech., Inc. v. Kroger Co.*, 2006 WL 3714445, at *2 (S.D.N.Y. Dec. 13, 2006); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999).

¶¶ 56–58, 61; *John Wiley & Sons, Inc. v. Swancoat*, 2009 WL 2486048, at *2 (S.D.N.Y. Aug. 14,

2009) ("Purposeful availment can be found even when defendants sell as few as one item into New

York via the internet.").  Voodoo SAS thereby intentionally targeted New York such that it could

foresee being hauled into court here.  *See Grand River*, 425 F.3d at 167.

      In its Motion, Voodoo largely ignores the many exhibits, articles, and website links

submitted with the Amended Complaint showing, *inter alia*, that Voodoo SAS itself appears to

have employees located in New York and involved with Blitz Win Cash, including the

self-described "CEO – Blitz US"; that it directly advertised to New Yorkers; and that it has clearly

customers in this District.  Instead, Voodoo tries to avoid jurisdiction through a declaration of

Celia Longueville, who, incidentally, claims not to be an employee of *any* of Defendants but rather

their ultimate parent, Stan Holding SAS.  *See* Longueville Decl. ¶ 1.[3]  Longueville's carefully

worded declaration attempts to distance the corporate parent, Voodoo SAS, from Defendants'

collective business activities in New York, but it does not deny that Voodoo SAS indirectly owns

and operates Defendants' applications, including Blitz Win Cash, and it certainly does not dispute

that Voodoo SAS controls and operates its own website, through which Blitz Win Cash is available

for download.  Longueville also does not deny that Voodoo SAS employees developed Blitz Win

Cash, instead claiming that no "***current*** employees" participated in its development.  *See*

Longueville Decl. ¶ 33 (emphasis added).  And she acknowledges that Voodoo SAS advertises its

applications (including Blitz Win Cash) and posts about them on social media.  *See id*. ¶ 31.[4]

---

[3] As Defendants' authority recognizes, "[i]f the parties present conflicting affidavits, however, 'all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'"  *Newman Cap. LLC v. Priv. Cap. Grp., Inc*., 2024 WL 2115311, at *4 (S.D.N.Y. May 10, 2024) (Broderick J.); Mot. at 12; *see also HSH Nordbank AG N.Y. Branch v. St*., 2012 WL 2921875, at *5 (S.D.N.Y. July 18, 2012).

[4] Much of Longueville's declaration is simply not credible and should be dismissed out of hand; for example, in the face a LinkedIn showing that Emile Haroune, the "CEO of Blitz – US," who *self-proclaims to be employed by Voodoo*

**B.    The Court Has General Personal Jurisdiction Over Voodoo SAS.**

A court has general jurisdiction over a foreign corporation under CPLR § 301 where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014) (quotation omitted); *see also id*. at 134 (analyzing when a foreign corporation may be subjected to a court's general jurisdiction based on contacts of in-state subsidiary). As described above, Voodoo SAS clearly has continuous and systematic contacts with New York. Notably, Skillz's prima facie evidence shows that Voodoo SAS's U.S. operations are based in New York. Although Longueville disputes that Voodoo SAS technically has an office in New York, Longueville Decl. ¶¶ 7–8, she does not dispute that Voodoo SAS's affiliate Esport Newco US's principal place of business is in New York, suggesting Voodoo SAS's New York office is technically owned or rented by another entity in Defendants' web of corporate relatives. *See* AC ¶ 49. Again, according to LinkedIn, Voodoo SAS employees (such as the "CEO – Blitz US") are based in New York. *Id.* ¶¶ 46, 61 n.38. Voodoo SAS also hires applicants for New York-based jobs. *Id.* ¶ 61 n.39; *see also id.* ¶¶ 23–27, 46, 56–58, 61 (describing Voodoo SAS's advertisements created in and directed towards New York and that Voodoo SAS purports to compel players to arbitration in New York City).[5]

---

*SAS*, is located in "New York, New York," *see* AC Ex. BB, Longueville claims that Voodoo SAS does not have any employees in New York, and that Haroune actually works for a different, still unnamed Voodoo affiliate. *See* Longueville Decl. ¶ 11. Similarly, although Longueville swears "Voodoo SAS has separate bank accounts from Esport," *id*. ¶ 20, she ignores screenshots attached to the Amended Complaint reflecting customer payments transferred into and out of Blitz Win Cash accounts by *Voodoo SAS*, *see* AC ¶¶ 31, 33. And while Longueville swears that "Pierre-Olivier Corvol, one of Esport Newco SAS's founders[,]" "has the power to make day-to-day business decisions on behalf of Esport Newco SAS without Voodoo SAS's oversight or approval," Longueville Decl. ¶ 19, Corvol's *own LinkedIn profile* represents he actually works for "Voodoo.io"—which is, undisputedly, Voodoo SAS. *See* AC Ex. Z; *see also id*. Ex. X (Blog post on Voodoo's website written by Corvol discussing his "10 Years at Voodoo.").

[5]  Moreover, Defendants' cited case—that evaluates whether a website can confer specific personal jurisdiction over a defendant—is wholly distinguishable because that defendant's *only* contact with New York was an act "instigated by [the] plaintiff"—a sale made by the plaintiff's investigator through the defendant's website. *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 622 (S.D.N.Y. 2013). *Buccellati*'s holding may no longer be good authority in any event. *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 363 (S.D.N.Y. 2020) ("A single sale

**C.      The Court Has Personal Jurisdiction Over Voodoo SAS Under an Alter Ego or Agency Theory.**

The Second Circuit has made clear "that the exercise of personal jurisdiction over an alter ego corporation does not offend due process." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 274–75 (2d Cir. 2023) (citation omitted).  "[T]he crux of the alter-ego theory of personal jurisdiction is that courts are to look for two entities acting as one, an inquiry that we have compared to piercing the corporate veil." *Id.* (cleaned up).  New York courts have recognized that an alter ego theory often necessitates a "fact laden inquiry" and is "unsuited for resolution" on a motion to dismiss. *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 799 (S.D.N.Y. 2017).

Skillz has adequately pled sufficient facts suggesting that Voodoo SAS is an alter ego of Esport Newco SAS and Esport Newco US Corp. *See, e.g.*, AC ¶¶ 47–48.  *First*, online postings show payments made from Voodoo SAS to Blitz Win Cash users, suggesting that funds among the Defendant companies are comingled. AC ¶¶ 31–33.  *Second*, current officers and employees of Voodoo SAS are affiliated with Esport Newco SAS and Blitz.  *Id.* ¶¶ 41–46.  *Third*, it appears that neither Esport Newco SAS nor Esport Newco US Corp. have employees who do not also work for Voodoo SAS.  *Id.* ¶ 48.  *Fourth*, Voodoo SAS and Esport Newco SAS share an address in France.  *Id.* ¶ 47.  Skillz has also pleaded that Defendants work together to promote Voodoo's applications in New York.  For example, Voodoo SAS heavily advertises its involvement in Blitz Win Cash on its website and social media. *See, e.g.*, *id.* ¶¶ 23–27, 29.  The Blitz Win Cash application *itself* suggests Voodoo SAS created it:  When users open the Blitz Win Cash application, the very first screen they see indicates the application is created "by Voodoo[.]"  *Id.*

---

may be sufficient provided that the defendant's activities were purposeful and there was a substantial relationship between the transaction and the claim asserted.  That is so even when the sale is made to a representative of the plaintiff's law firm." (citations and quotation marks omitted)).

¶ 22.[6]  In addition, Blitz Win Cash's Facebook page lists "Voodoo Labs" as "responsible for this Page[.]"  *Id.* ¶ 30.  Voodoo SAS also advertises for jobs at Blitz Win Cash, further suggesting that it controls Blitz Win Cash's day-to-day operations.  *Id.* ¶¶ 34–39.

Accordingly, as an alter ego or agent of Esport Newco SAS and Esport Newco US Corp., this Court has personal jurisdiction over Voodoo SAS.  *Newman Cap. LLC*, 2024 WL 2115311, at *7; *see also, e.g.*, *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (noting that in general, "'alter egos are treated as one entity' for jurisdictional purposes." (citation omitted)); *LaChapelle*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014) (agency jurisdiction proper where agent acts "for the benefit of and with the knowledge and consent of the defendant and the defendant exercised some control over the agent in the matter" (citation omitted and cleaned up)).

### D.    In the Alternative, the Court May Exercise Personal Jurisdiction Over Voodoo SAS Pursuant to Federal Rule of Civil Procedure 4(k)(2).

If the Court finds Voodoo SAS is not subject to jurisdiction under CPLR § 302, § 301, or an alter ego or agency theory, the Court can exercise jurisdiction over Voodoo SAS under Rule 4(k)(2), which applies where "(1) plaintiff's cause of action arises under the federal law; (2) the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one State; and (3) the defendant's total contacts with the United States as a whole are sufficient to confer the court with personal jurisdiction without offending due process."  *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 124 (S.D.N.Y. 2020) (citation and alterations omitted).

---

[6]  Longueville's perplexing and frankly unbelievable testimony that "[t]he decision to include 'by Voodoo' in the opening screen of the Blitz Win Cash App was not made, dictated, or directed by Voodoo SAS," Longueville Decl. ¶ 24, is typical of her Declaration, which goes to great pains to paint Voodoo SAS—which is, undisputedly the corporate parent of the other Defendants—as uninvolved with the application she *nearly* admits it developed.  *See id*. ¶ 33 (testimony that "[n]o *current* employees of Voodoo SAS participated in the development of the Blitz Win Cash App") (emphasis added).

Voodoo SAS advertises and markets Blitz Win Cash throughout the United States. AC ¶¶ 55–60. Voodoo SAS also has employees living and working in this country. *See, e.g.*, AC Exs. BB, EE, FF, GG, HH, II (Voodoo SAS LinkedIn profiles and posts). And Voodoo SAS solicits U.S.-based employees through job postings. *Id.* Exs. JJ, KK. Voodoo SAS certainly attributes a sizable portion of its revenue to the U.S., and as a result, has sufficient minimum contacts with the U.S. *Dularidze v. Turk Hava Yallario A.O.*, 2024 WL 3567332, at *4 (S.D.N.Y. July 28, 2024). As jurisdiction is not contested by Esport Newco SAS and Esport Newco US Corp., and as a factual nexus links Defendants to the U.S., this Court's exercise of jurisdiction over Voodoo SAS is reasonable and would prevent parallel litigations in multiple fora. *See id.* at *4; *George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co.*, 2021 WL 168930, at *11 (S.D.N.Y. Jan. 18, 2021).

### E.    At a Minimum, Jurisdictional Discovery Is Warranted.

At this stage, Skillz has met its burden to show that personal jurisdiction over Voodoo SAS is appropriate. If any ambiguity remains, at a minimum, Skillz should be permitted to conduct jurisdictional discovery. *City of Almaty*, 278 F. Supp. 3d at 809 ("Jurisdictional discovery is warranted where, even if plaintiff has not made a prima facie showing, they have made a sufficient start toward establishing personal jurisdiction." (quotation marks and alterations omitted)).

## IV.    THE AMENDED COMPLAINT STATES A CLAIM FOR FALSE ADVERTISING AND UNFAIR BUSINESS PRACTICES.

On a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Dismissal is improper where a claim has "facial plausibility"—that is, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "Rule 12(b)(6) imposes a substantial burden of proof upon the moving party, who mu[st] demonstrate beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Red Ball Interior Demolition Corp. v. Palmadessa*, 1996 WL 159066, at *2 (S.D.N.Y. Apr. 5, 1996) (citation and quotation marks omitted). Skillz's claims have far more than the requisite "facial plausibility," and Voodoo has failed to meet its "substantial burden of proof" for dismissal.

**A.    The Amended Complaint Sufficiently Alleges False Advertising Under Section 43(a) of the Lanham Act.**

**1.    The AC alleges Voodoo's statements are false and misleading.**

"To state a false advertising claim under 15 U.S.C. § 1125(a), a plaintiff must plausibly allege the falsity and materiality of the challenged statement" and "must also plausibly allege injury as a result of the defendants' false statements." *Papaya Gaming*, 2024 WL 3526853, at *2. A claim under Section 43(a) of the Lanham Act may lie under two theories: literal falsity or a likelihood to mislead or confuse consumers. *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 344 (S.D.N.Y. 2008). An advertisement is still considered false even if "while not literally false, is nevertheless likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010). Moreover, "a district court evaluating whether an advertisement is literally false must analyze the message conveyed in full context." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (quotation marks omitted).

In its case against Papaya Gaming, Skillz alleged that Papaya engaged in false and misleading advertising by representing that their games were "skill-based" and "fair" where it secretly deployed bots as players. *See* Comp., *Skillz Platform Inc. v. Papaya Gaming, Ltd*, No. 24 Civ. 1646 (S.D.N.Y. Mar. 4, 2024), ECF No. 1, Pillai Decl. Ex. B. In denying Papaya's motion to dismiss, Judge Cote held that Papaya Gaming's "references to 'players', 'individuals', 'winners', 'fair' and 'skill-based'" may be "found by a jury to imply that Papaya's games of

competition are conducted among human players only and not among humans and bots." *See Papaya Gaming*, 2024 WL 3526853, at *3. Voodoo's false advertisements here are, in sum and substance, the same as Papaya's—and in some cases, even more deceptive. *See, e.g.*, AC ¶ 135 ("Blitz Win Cash's Rules [] imply that [] participants in these tournaments—referred to as 'players' and 'users'—are live human players."); *id.* ¶¶ 116–23 (Voodoo advertises that its games are fair and skill-based and promises "With no bots allowed, you'll play against real players worldwide"); *id.* ¶¶ 126–31 (negative reviews and Voodoo's responses that it does not use bots).

Voodoo offers no basis for this Court to depart from Judge Cote's well-reasoned opinion, as it does not even acknowledge the decision. Instead, Voodoo resorts to a farcical mischaracterization of one (and just one) of its own advertisements, claiming that when Voodoo promises "no bots allowed!", that is really an admonition to *players* not to automate their game play, instead of a promise to players that its games are played only among humans (and therefore fair).[7] Setting aside that this misinterpretation was clearly invented by counsel for the purpose of this Motion, Voodoo also fails to address the many allegations in the Amended Complaint contradicting it and giving proper context to the "no bots allowed" promise. *See* AC ¶ 2 (citing advertisement that reads "'No bots allowed! Play against real opponents only.'"); *id.* ¶¶ 119–20 (quoting advertisements, including "'With no bots allowed, you'll play against real players worldwide in daily challenges, weekly contests, and multiplayer tournaments.'"); *id.* ¶ 117

---

[7] Voodoo's citations to a supposed "audit" of its bot use in its Motion are entirely improper. *See, e.g.*, *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60–61 (S.D.N.Y. 2010) (disregarding, on a motion to dismiss, exhibits "neither . . . incorporated by reference nor integral to the complaint" and noting that even if incorporated or integral, a court still may not consider an exhibit "if there is a dispute 'regarding the authenticity or accuracy of the document' or 'the relevance of the document' to the dispute" (citation omitted)). Regardless, Voodoo's heavily redacted, so-called neutral audit has no probative value for multiple reasons, including that it almost certainly defined "bots" in an artificially narrow manner, and examined *only* source code (as opposed to other relevant company information) during a merely *one-week period*.

14

(describing how Voodoo advertises its games to the public, including that they are fair and skill-based, and that it does not have a vested interest in who wins or loses).[8]

Furthermore, and setting aside that Judge Cote's decision dooms Voodoo's 12(b)(6) arguments, Voodoo is also wrong that its statements that Blitz Win Cash is "skill-based" and "fair" are non-actionable statements of opinion.  Mot. at 9.[9]  Voodoo cannot credibly claim that the statements alleged in the Amended Complaint are "subjective" because its Motion strips the statements of their necessary context, including that its games are "fair" and skill-based" *because* it (supposedly) matches human users of like skill level.  *See* AC ¶ 6 (quoting Voodoo's advertisements, with emphasis added:  "This is not just any gaming app, it's a fair, skill-based competition app" where "***rivals are at a similar level, so everybody has an opportunity to win!***"); *id.* ¶ 172 ("Voodoo's representations (at the very least) imply that the outcomes of the games are determined exclusively by the skill level of live humans."); *see also Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016) ("[The] inquiry [into falsity] requires evaluating 'the message conveyed in full context.'"); *Papaya Gaming*, 2024 WL 3526853, at *3, Pillai Decl. Ex. A ("'[F]air' and 'skill-based' may be found by a jury to imply that Papaya's games of competition are conducted among human players only and not among humans and bots.").

---

[8]  Voodoo also ignores many allegations in the AC that, in response to negative reviews in the App Store such as "Not even real people. You win a few games and then you lose even more.  It's just an infinite cycle of gaining nothing. Don't waste your time[,]" Voodoo responds:  "Please remember that no bots are operating on Blitz.  You are always matched with real players and given a fair chance to win." AC ¶ 129; *see also id*. ¶ 128 (in response to review that reads in its entirety: "Rigged they use bots it's impossible to win," Voodoo responds:  "No bots are playing on Blitz."). Furthermore, the Voodoo goes to great lengths to make such a hyper technical argument further underscores how deceptive its advertisements are.  *See Murray Space Shoe Corp. v. F.T.C.*, 304 F.2d 270, 272 (2d Cir. 1962) (affirming order to cease and desist false and misleading advertisements because petitioners sought "to engage [the court] in a hypertechnical argument as to the meaning of each word and phrase which the Commission found to be deceptive.").

[9]  Voodoo's reliance on *Olson v. Major League Baseball*, 29 F.4th 59, 73 (2d Cir. 2022) is misplaced.  Mot. at 9. The day after *Olson* was decided, the New York Court of Appeals held that whether games are skill-based for purposes of the state's gambling laws is a fact question.  *See White v. Cuomo*, 38 N.Y.3d 209, 225 (2022) ("[W]e need not assume facts as the legislature's determination of the skill issue—*a fact question*—is supported by considerable evidence . . . demonstrating that [interactive fantasy sports] contests are not games of chance because the outcome is predominantly dependent upon the skill of the participants." (emphasis added)).

In addition, whether Voodoo's Blitz Win Cash application is "skill-based" is verifiable statement. *See, e.g., Thomas H. v. Paul B.*, 942 N.Y.S.2d 437, 440 (2012) (in defamation context, distinguishing fact from opinion based on "whether the statement can be proven as true or false" and whether a statement signals to "readers or listeners that what is being read or heard is likely to be opinion, not fact" (internal quotations omitted)). Indeed, Voodoo's advertisements, such as its promise of "no bots allowed—play against real players only"—objectively describe the nature of its games without any conjecture, hyperbole, speculation, or hedging, which weighs against labeling those statements "opinions." *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18–19 (1990).

Even more to the point: to operate in the United States, Voodoo is required to represent to financial institutions that its games are skill-based, do not constitute illegal gambling, and that it does not have a financial interest in the outcome of its tournaments. *See* AC ¶¶ 7, 171; *see also, e.g.*, 18 U.S.C. § 1955 (prohibiting illegal gambling businesses in violation of state law); *cf. United States v. DiCristina*, 726 F.3d 92, 101 (2d Cir. 2013) ("[U]nder New York law a 'contest of chance' encompasses games in which the skill of the contestants may play a role, so long as the outcome depends in a material degree on chance."); *White v. Cuomo*, 38 N.Y.3d at 225 (whether fantasy sports contests are games of chance is a "fact question"). Voodoo cannot have it both ways—it cannot disclaim that it is an illegal gambling platform because it is "skill-based" and "fair," while simultaneously claiming that advertisements calling its games "fair" and "skill-based" are mere opinions. *Compare* Mot. at 9 ("characterizations of the Blitz App as 'skill-based' and 'fair' are not representations of objective facts"), *with id.* at 24 ("Plaintiff has failed to plausibly assert that Defendants are engaged in illegal gambling, and that the Blitz App games are not skill games").

### 2.    The AC alleges Voodoo's false advertising has injured Skillz.

The Amended Complaint plausibly alleges that Voodoo's false statements to the marketplace have caused harm to Skillz, Voodoo's direct competitor. A plaintiff is injured by

false advertising that affects its "commercial interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). "[I]n pleading a false advertising claim under the Lanham Act, the plaintiff need not provide evidence of actual loss or specific evidence of causation." *Beyond 79, LLC v. Express Gold Cash, Inc.*, 2020 WL 7352545, at *6 (W.D.N.Y. Dec. 15, 2020) (quoting *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 543 (S.D.N.Y. 2018)). Instead, the plaintiff need only "plausibly allege injury," which in cases other than those involving false comparative advertising, requires the plaintiff to merely "present some affirmative indication of actual injury and causation." *Papaya Gaming*, 2024 WL 3526853, at *2 (citation omitted); *see also In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 508 (S.D.N.Y. 2004).

Skillz plausibly alleges two forms of injury caused by Voodoo's false advertising: (1) lost market share from diverted consumers; and (2) lost sales from consumers exiting the market. Skillz has plausibly alleged these injuries are proximately caused by Voodoo's false advertising.

> **a)    Skillz has adequately alleged injury in the form of diverted customers and lost market share.**

Skillz has plausibly alleged that it has suffered lost market share injuries caused by Voodoo's false advertising that diverts customers away from Skillz's products and towards Voodoo's Blitz Win Cash. The Amended Complaint alleges numerous facts demonstrating the nature of its competition with Voodoo. Both Skillz and Voodoo are major players in the mobile gaming industry. *See* AC ¶¶ 4–5, 70–83; 98–102. Through Blitz Win Cash, Voodoo "offers imitations of Skillz's games, with similar objectives, game play, and financial stakes for players." *Id.* at ¶ 5. Both companies offer their games through the Apple App Store. *Id.* ¶¶ 84, 101. And both companies compete for the same users, and "in many cases, Voodoo's gain is Skillz's loss" because mobile gamers tend to maintain loyalty to a single platform. *Id.* ¶¶ 104–06. Thus, "[b]y making these false representations to consumers, including within advertisements, on its website,

within its game applications, and in response to user reviews, Voodoo has diverted at least some of Skillz's player base, thereby harming Skillz, including by way of lost revenue, market share, and profits in an amount to be proven at trial." *Id.* ¶ 177; *see also id.* ¶ 142.

In the *Papaya Gaming* case, Judge Cote concluded that, based on similar allegations, that Skillz sufficiently alleged diverted customers and market share loss such that dismissal for failure to state a claim was not warranted. Specifically, Judge Cote found:

> The complaint plausibly alleges that Skillz has lost players to Papaya because of Papaya's unfair competition. The complaint explains that in this online gaming world, players are not likely to switch between platforms once they have decided on which to join. Instead, they are motivated to build up in-game rewards and accomplishments on a single platform. Accordingly, when players have joined Papaya because of its false advertising, these players are often lost to its competitors.

*See* 2024 WL 3526853, at *3 ; *see also Beyond 79*, 2020 WL 7352545, at *6 ("At this stage of the proceedings, Plaintiff's allegation that the deceptive websites created and maintained by [Defendants] diverted customers who otherwise would have used Plaintiff's services is sufficient to satisfy the requirement of injury"). The result should be no different here.[10]

Rather than grapple with—or even cite once—Judge Cote's ruling, Voodoo misinterprets and misapplies less relevant case law. *See* Mot. at 7–8 (citing *Casper Sleep, Inc. v. Nectar Brand LLC*, 2020 WL 5659581, at *8–9 (S.D.N.Y. Sept. 23, 2020)). Contrary to Voodoo's contention, the *Casper* court did not hold that the plaintiff could not allege damages simply because there were multiple competitors in the relevant market and the defendants' advertising did not reference the

---

[10] Voodoo attempts to distract the Court with a spotlight on Skillz's allegation that this loyalty-based competitive nature of the market amounts to a "zero-sum game." *See* AC ¶ 106; Mot. at 6–8. In doing so, Voodoo misconstrues the meaning of that phrase. Voodoo argues that there can be no "zero-sum game" because there are other market players beyond just Skillz and Voodoo, thus implying that a "zero-sum game" can only involve two players. *See id.* Voodoo is wrong. *See Zero-Sum Game*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/zero-sum%20game ("a situation in which one person or group can win something only by causing another person or group to lose it"); *see also Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 WL 4002468, at *30 (S.D.N.Y. July 1, 2015) ("[F]alsely advertising a product within a given category may cause harm to that category as a whole."), *aff'd*, 843 F.3d 48 (2d Cir. 2016).

plaintiff's product. *See id.* at 8 & n.11.[11] Instead, the *Casper* court granted the motion to dismiss because the plaintiff failed to "plead non-conclusory facts that make it plausible that Plaintiff lost sales because of Defendants' misleading statements." *Casper*, 2020 WL 5659581, at *8; *see also Dependable Sales*, 2016 WL 79992, at *8 (denying a motion to dismiss a complaint filed by 162 car dealerships in a case concerning the car dealership market across the entire United States).[12] As described above, Skillz's detailed allegations significantly outweigh the "bare allegations" made by the *Casper* plaintiff. *See* AC ¶¶ 104–06, 137–42, 176–77; *see also id.* ¶¶ 181–84 (detailing Skillz's diminished position on Apple's App Store in relation to Blitz Win Cash; that downloads of Skillz's games decreased as players who were previously entering competitions on Skillz's platform and new entrants into marketplace played Voodoo's games instead; and that Skillz's revenue decreased approximately 40% year-over-year for the first six months of 2024 while Blitz Win Cash saw almost 850,000 new downloads); *infra* Section IV.A.2(c).

Voodoo also disputes the method by which Skillz alleges injury and argues that there is no proximate causation because there could be other reasons for Skillz's injury. *See* Mot. at 5–6 & n.7. Voodoo is wrong on the facts (and the damages theory), but regardless, these arguments are not proper on a motion to dismiss. *See Ramchandani v. Sani*, 844 F. Supp. 2d 365, 366 (S.D.N.Y.

---

[11]   The only relevance of a two-player market and comparative advertising—which Skillz does not allege—is for purposes of obtaining a presumption of injury. *See Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337 (S.D.N.Y.), *on reconsideration*, 394 F. Supp. 3d 368 (S.D.N.Y. 2019). Notably, Voodoo cites these two rulings multiple times as support for its incorrect argument that Skillz failed to allege that Voodoo's false advertising proximately caused Skillz's injury. *See* Mot. at 3, 7, 9. This is yet another attempt by Voodoo to apply the more favorable standard for a post-discovery motion for summary judgment—as was before the *Dependable Sales* court in the two cited rulings—rather than the applicable standard for a pre-discovery motion to dismiss. *See* 377 F. Supp. 3d at 342 ("Discovery in this case is now closed and [defendant] moves for summary judgment in its favor."). In fact, in an earlier ruling in that same case, the court expressly denied the defendant's motion to dismiss for failure to allege injury because the defendant, like Voodoo, made merits-based counterarguments "not properly reached on a Rule 12(b)(6) motion." *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 2016 WL 79992, at *8 (S.D.N.Y. Jan. 6, 2016).

[12]   Though inconsequential, Voodoo is wrong in alleging a "sheer enormity of the number of market participants" due to "hundreds, if not thousands, of competing mobile cash games." Mot. at 6–8. The relevant market is *skill-based* mobile cash games, not *all* mobile cash games, such as online casino, poker, and slots games. Additionally, multiple skill-based cash games are from the same handful of companies. *See* Gordon Decl. Ex. A.

2012) (rejecting, on a motion to dismiss, "Defendants' [] argument . . . that plaintiff has suffered no commercial or competitive injury and that there are so many [market participants] that he could have no reasonable basis for believing that defendants' allegedly fraudulent activities could harm him"); *see also Papaya Gaming*, 2024 WL 3526853, at *3 (rejecting defendants' argument that Skillz's injury was "too conclusory . . . because there may be several reasons why consumers would choose to play Papaya games rather than Skillz games"); *Dependable Sales*, 2016 WL 79992, at *8. The Court should reject Voodoo's premature arguments on this point.

> **b)    Skillz has adequately alleged injury in the form of lost sales from customers exiting the market.**

Skillz also plausibly alleges that Voodoo's false advertising about its bot usage shrinks the overall market for real-cash, skill-based competitive gaming.  Specifically, the Amended Complaint provides numerous examples of online reviews of Blitz Win Cash complaining about Voodoo's use of bots and its false representations that its game is "fair" and "skills based," adding that those false representations induced the reviewers to play Voodoo's games and that, as a result of Voodoo's bot usage, they will no longer participate in the skill-based cash game market at all. AC ¶¶ 128–29, 148–50.  For example, one review about Blitz Win Cash reads, "Just like every other game it's a scam." *Id.* ¶ 150.  Another review advises other consumers to "just go ahead and go to a casino" or "just go buy you a lottery ticket."  *Id.* ¶ 149.  Some customers who feel cheated by Voodoo feel cheated by the industry as a whole and, as shown by online reviews, often do not differentiate between gaming companies.  Thus, customers deceived by Voodoo's bot use who

would otherwise use Skillz's platform instead exit the real-cash, skills-based gaming market altogether, thereby harming Skillz as a prominent member of that market. *See id.* ¶¶ 9, 177.[13]

This market-wide customer exodus and reputational harm clearly falls within the categories of injury that the Lanham Act's civil liability provision is designed to remedy. *See Lexmark*, 572 U.S. at 133 (holding that "economic or reputational injury" "that occurs when deception of consumers causes them to withhold trade from the plaintiff" is the ordinary type of actionable injury under the Lanham Act); *see also Church & Dwight*, 2015 WL 4002468, at *30 ("[F]alsely advertising a product within a given category may cause harm to that category as a whole."). Nowhere does Voodoo even engage with this form of commercial harm, and it is foreclosed from attempting to do so in its reply brief. *See, e.g.*, *Al Thani*, 2021 WL 1895033, at *10 n.6.

### c) Skillz's injuries directly flow from Voodoo's false advertising.

To state a claim for Lanham Act false advertisement, a plaintiff must allege proximate causation, which ordinarily means that plaintiff's "economic or reputational injury flow[ed] directly from the deception wrought by the defendant's advertising." *Lexmark*, 572 U.S. at 133. Skillz has alleged precisely that, as "Skillz and Voodoo are direct competitors." AC ¶ 106; *see also id.* ¶ 99 ("Voodoo's games are similar to versions offered on the Skillz platform . . . and they directly compete for users with the analogues available on Skillz's platform.").

Voodoo contests these allegations (which must be taken as true in any case) by arguing that Skillz and Voodoo are not similarly situated in the real-cash skills-based game market. *See*

---

[13]  To the extent that Voodoo, in its reply brief, contests the admissibility of these online reviews at this stage of the litigation, they would be wrong, as Judge Cote recently found. *See Papaya Gaming*, 2024 WL 3526853, at *3 ("The complaint plausibly pleads materiality even without the allegations regarding the review.  In any event, the admissibility of the evidence of online reviews will depend on the purpose for which that evidence is offered and will be addressed at the summary judgment stage or trial.  It is not error to rely upon it in a pleading."); *see also 3B Med. Inc. v. SoClean, Inc.*, 857 F. App'x 28, 29 (2d Cir. 2021) (relying on evidence of online customer reviews in reversing the district court's grant of a motion to dismiss).

Mot. at 3–5.  Not so.  This is not a situation synonymous with *Frompovicz v. Niagara Bottling, LLC*, cited by Voodoo.  *See* 313 F. Supp. 3d 603, 614 (E.D. Penn. 2018) ("[The Bottler Defendants'] mislabeled bottles are purchased by consumers.  However, Plaintiff does not sell to consumers.  He sells to bottlers." (footnote omitted)).  Instead, both Skillz and Voodoo market to the same general public and retain a portion of consumers' entry fees.  *See* Gordon Decl. Ex. B at 44 (ECF. No. 64-2 at 47) ("[Skillz] generate[s] revenue by receiving a percentage of player entry fees . . ."); AC ¶ 111 ("[E]ach player in [a Voodoo] game pays an entry fee.  Upon information and belief, Voodoo takes a cut of this cash for itself.").  It is inconsequential that Voodoo develops individual games in-house whereas Skillz "opened its platform to third-party game developers to maximize the impact and reach of its innovation."  *See* AC ¶ 72.  What matters is that Skillz and Voodoo both generate revenue from entry fees and therefore compete for the same consumers who pay those entry fees, even if Skillz's third-party developers also generate revenue from those entry fees.  *See Lexmark*, 572 U.S. at 138–39.[14]  Thus, Skillz has sufficiently alleged causation.

### B.    The Amended Complaint Sufficiently Pleads a Violation of N.Y. GBL § 349.

The elements of a cause of action under N.Y. General Business Law ("GBL") § 349 are: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct."  *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 446

---

[14]    Even if the Court concludes that Skillz and Voodoo are not direct competitors, dismissal is still improper. The Supreme Court has stated that "although diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under § 1125(a)."  *Lexmark*, 572 U.S. at 138.  In that case, the Court held that the plaintiff, who sold a microchip to manufacturers of defendant's product, had adequately alleged that its injury was proximately caused by the defendant's false advertising, despite a lack of direct competition.  *Id.* at 139–40.  Even if Skillz is not a direct competitor with Voodoo—as it is—Skillz's allegations are akin to those made by the *Lexmark* plaintiff.  If the third-party game developers on Skillz platform receive fewer users because of Voodoo's false advertising, then there are fewer entry fees being paid into those Skillz-based games, which results in less revenue for both the third-party game developers *and* Skillz.  *See* AC ¶ 177; Gordon Decl. Ex. B at 44 (ECF No. 64-2 at 47).  Thus, the third-party game developers "are not 'more immediate victim[s]' than" Skillz.  *See Lexmark*, 572 U.S. at 140 (citation omitted).

(S.D.N.Y. 2020) (citations and quotation marks omitted).  While the standard for liability under N.Y. GBL § 349 is "substantially the same" as for claims brought under Section 43(a) of the Lanham Act, *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 518 (S.D.N.Y. 2012), some courts have imposed a higher standard for New York state law claims, *i.e.* that a non-consumer plaintiff must allege conduct with "significant ramifications for the public at large."  *Chanel*, 449 F. Supp. 3d at 446 (citations and quotation marks omitted).  Skillz states a claim under both standards.

In its Motion, Voodoo disputes (1) a causal connection between its deceptive advertisements and Skillz's injury, and (2) an injury to the public's interest.  Mot. at 10.  Voodoo's causation argument is easily dispensed with for the same reasons its arguments fail under the Lanham Act, as explained in Section IV.A.2, *supra*.  Concerning injury to the public interest, Voodoo's argument ignores the specific allegations in the Amended Complaint highlighting the significance of Voodoo's conduct upon unsuspecting consumers.  AC ¶¶ 199–203 (alleging use of bots harms public through illegal gambling and customer confusion).  As Judge Cote recognized based on similar allegations against Papaya Gaming, Skillz more than adequately "identifie[d] consumer-oriented conduct by the defendant, specifically Papaya's representations to the public about the players in its games."  *Papaya Gaming*, 2024 WL 3526853, at *4.  The Court should ignore Voodoo's untenable arguments and agree with Judge Cote's reasoned holding.

Voodoo's claim that its alleged conduct does not pose a "health or safety risk," Mot. at 11, is also belied by the fact that the U.S. Department of Justice has reportedly launched a criminal investigation into AviaGames' use of bots in cash games—the same conduct that Voodoo is accused of here.  *See, e.g.*, *Skillz Platform Inc., v. AviaGames Inc.*, No. 21 Civ. 02436, at 5 (N.D. Cal. Nov. 27, 2023), ECF No. 521, Pillai Decl. Ex. C (order continuing trial against AviaGames pending criminal investigation).  Voodoo's argument wholly ignores that illegal gambling, by

virtue of its criminal nature, is harmful to the health and safety of the public.  Mot. at 11; *see* N.Y. PENAL LAW § 225.00 (Title M: Offenses Against Public Health and Morals).  Finally, the real and ongoing harms to the public are underscored by class actions filed against other competitors in the mobile cash gaming industry alleging a myriad of violations of consumer protection laws based on their use of bots.  Compl., *Kelly-Starkebaum v. Papaya Gaming Ltd.*, No. 24 Civ. 02310 (S.D.N.Y. Mar. 27, 2024), ECF No. 1, Pillai Decl. Ex. D; Compl. ¶ 7, *Pandolfi v. AviaGames, Inc.*, No. 23 Civ. 05971 (N.D. Cal. Nov. 17, 2023), ECF No. 1, Pillai Decl. Ex. E (class action alleging "misrepresentations to consumers").  Voodoo's false statements certainly have significant consequences for the consuming public, who are being misled into paying Voodoo to participate in rigged games.  *See also e.g. Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 2013 WL 3943267, at *13 (S.D.N.Y. July 31, 2013).

## V.    THE COURT SHOULD DENY VOODOO'S MOTION TO STRIKE.

Motions to strike are "'disfavor[ed] and infrequently granted.'"  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 394 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (quotation omitted).  Voodoo admits the three different elements it must show to overcome this disfavor, yet it fails to actually show any of them in the Motion.  *See* Mot. at 23.

Voodoo feebly argues that the challenged allegations are not relevant to the issues of the case, and thus no evidence concerning them would be admissible.  *See id.* at 23–24.  This is simply wrong.  Skillz alleges that Voodoo has falsely advertised that Blitz Win Cash is "fair" and "skill-based" and does not use "bots."  What makes these advertisements false and misleading—a required element of its Lanham Act and GBL § 349 claims—is that Voodoo's bot usage (and concealment thereof) is tantamount to illegal gambling.  Likewise, in seeking to dismiss Skillz's N.Y. GBL § 349 claim, Voodoo argues that the Amended Complaint "fails to allege 'injury to the public interest over and above an ordinary [false advertising] case,' which is 'fatal' to Plaintiff's

GBL claim." Mot. at 10 (citation omitted). What makes the injury to the public interest so palpable is that Voodoo's conduct entices the public into participating, unwittingly, in illegal gambling. *See* AC ¶ 201. Thus, the challenged allegations are not only relevant, but *integral*, to both of Skillz's claims. *See, e.g.*, *Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, 2017 WL 5905574, at *15 (S.D.N.Y. Nov. 29, 2017) (denying motion to strike).

Moreover, because the challenged allegations are so closely tied to Skillz's claims, they also do not prejudice Voodoo or rise to the level of "scandalous." *See Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 64–65 (E.D.N.Y. 2011) ("[I]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." (cleaned up)); *Aviagames Inc.*, No. 21 Civ. 02436 (N.D. Cal. Nov. 6, 2023), ECF No. 464, Pillai Decl. Ex. F (rejecting argument that amendments to the complaint alleging fraud and criminal conduct were "an attempt to prejudice AviaGames with inflammatory allegations."). That Voodoo may find its own practices scandalous or embarrassing is not a proper basis to strike the allegations. *See also, e.g.*, *Britt v. Elm City Communities*, 2018 WL 3574866, at *1 (D. Conn. July 24, 2018) ("[D]isagreeing with [opponent's] version of the facts is not a proper basis for striking an answer."). Thus, the Court should decline to strike any allegations in Skillz's Amended Complaint.[15]

## VI.    CONCLUSION

For the foregoing reasons, Skillz respectfully submits that the Court should deny Voodoo's Motion in its entirety.

---

[15]    Voodoo also argues that "Plaintiff has failed to plausibly assert that Defendants are engaged in illegal gambling, and that the Blitz App games are not skill games" and that Voodoo's actions amount to illegal gambling. *See* Mot. at 24–25. It is no wonder that Voodoo seeks to strike paragraphs 154–58 of the Amended Complaint, as those are the exact paragraphs in which Skillz clearly makes these plausible assertions.

Dated:  October 30, 2024
       New York, New York           KING & SPALDING LLP

                               By:  */s/ Craig Carpenito*

                               Craig Carpenito
                               Jessica Benvenisty
                               Alvina Pillai
                               KING & SPALDING LLP
                               1185 Avenue of the Americas
                               New York, NY 10036-4003
                               Tel: (212) 556-2100
                               Fax: (212) 556-2222

                               Lazar P. Raynal (*pro hac vice*)
                               Michael A. Lombardo (*pro hac vice*)
                               KING & SPALDING LLP
                               110 N Wacker Drive
                               Suite 3800
                               Chicago, IL 60606
                               Tel: (312) 995-6333
                               Fax: (312) 995-6330

                               *Attorneys for Plaintiff Skillz Platform Inc.*