# King & Spalding

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, New York 10036

Craig Carpenito
Partner
Direct Dial: +1 212 556 2142
ccarpenito@kslaw.com

October 31, 2024

**BY ECF**

Hon. Vernon S. Broderick
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

      Re:    *Skillz Platform Inc. v. Voodoo SAS, et al.*, No. 24 Civ. 04991 (S.D.N.Y.)

Dear Judge Broderick:

      We respectfully write on behalf of Plaintiff Skillz Platform Inc. ("Skillz") in opposition to Defendants' letter requesting a stay of discovery pending resolution of Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 67) ("Letter").

      The serious and particularized allegations in the First Amended Complaint (ECF No. 48) ("Amended Complaint" or "AC") in this case detail that Defendants (hereinafter, "Voodoo") use bots to manipulate the outcomes of their mobile real cash games while falsely advertising their games as "fair," "skill-based," and as having "No bots allowed! Play against real opponents only," on its website, application, social media, and in response to user reviews. *See, e.g.*, AC ¶¶ 1–2, 116–36. Through its false and unfair advertising and business practices, Voodoo has exploited members of the public who rely on their advertisements, as well as harmed Skillz, which is a direct competitor to Voodoo in the market of skill-based mobile cash games. Specifically, Skillz—which does not use bots in its cash games—has seen reduced downloads and lost customers and incurred a precipitous loss of revenue while Voodoo's market share has increased. *Id.* ¶¶ 9, 100, 102, 112, 142, 181–84. Skillz has therefore moved for expedited discovery and a preliminary injunction enjoining Voodoo's false advertising and use of bots. *See* ECF Nos. 50, 51.

      As a preliminary matter, that Voodoo continues to hide behind a purportedly "independent audit" that *does not even say Voodoo does not currently use bots* shows exactly why expedited discovery—not a stay—is warranted here. Indeed, in relying on this so-called "audit," Voodoo is admitting that whether or not it uses bots is at the heart of this Lanham Act case and should be exposed via expedited discovery. *See* ECF No. 51. Moreover, even if Voodoo's "audit" said its games do not presently use bots (and it does not say that), the "audit" would still have no probative value given its authenticity, reliability, and relevance issues. It is undisputed that Voodoo's consultants reviewed source code and logs for only a one-week period in May 2024, and its conclusions (to the extent there are reliable conclusions at all) are therefore not applicable to any

October 31, 2024
Page 2

period other than that week. *See* ECF No. 71-1 at 23.[1] Elsewhere, the "audit" is heavily redacted, and thus cannot even be evaluated on its own merits.[2] But even its limited amount of unredacted text shows that its authors were compelled to condition their conclusions; their consultants noted, among other things, that "[t]he information gathered from Esports Newco SAS personnel [was] assumed to be accurate and complete" and that "[t]here are unavoidable limitations inherent to performing an audit within a short period of time." *Id.* at 35.

If Voodoo's reliance on the "audit" does not itself compel denial of its request for a stay of discovery, Voodoo has also not satisfied its burden of showing "good cause" under well-settled law. *See Nielsen Co. (US) v. TVSquared LTD*, 2023 WL 4363005, at *1 (S.D.N.Y. July 6, 2023) (Broderick, J.); *Bennett v. Cuomo*, 2023 WL 2021560, at *1 (S.D.N.Y. Feb. 15, 2023) (Broderick, J.). In deciding whether good cause has been shown to stay discovery pending a dispositive motion, courts consider "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Nielsen*, 2023 WL 4363005, at *1 (citation omitted); *see also id.* ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed[.]" (citation omitted)). Voodoo has not met its burden on any of the three factors.

First, Skillz's claims are meritorious, and Voodoo has failed to make a "strong showing" otherwise. *See Nielsen*, 2023 WL 4363005, at *1. Notably, Judge Denise L. Cote recently denied, in a methodical opinion and order, a motion to dismiss Skillz's similar Lanham Act and N.Y. GBL § 349 claims against another competitor in the mobile cash gaming space that uses bots. *Skillz Platform Inc. v. Papaya Gaming, Ltd.*, No. 24 Civ. 1646, 2024 WL 3526853 (S.D.N.Y. July 23, 2024) (ECF No. 75-1). The reason that Voodoo fails to even mention this ruling is clear: There is no reason for this Court to depart from it. Furthermore, and for the other reasons explained in Skillz's Opposition to Defendants' Motion to Dismiss (ECF No. 74) ("Opposition"), the Amended Complaint plausibly alleges that Voodoo's advertisements are fact-based and actionable and that Skillz has been harmed by Voodoo's misconduct, despite Voodoo's suggestion that the existence of other mobile cash gaming companies is somehow problematic. *See* Opposition at 12–24 (ECF No. 74 at 19–31).[3] This factor weighs heavily against a stay of discovery.

Second, the discovery sought is not unduly burdensome. As contrasted with a typical case, the discovery sought is already known to Voodoo. In fact, on October 16, 2024, Skillz served on Defendants ten Requests for Production (the same requests submitted with its Motion for

---

[1] Voodoo also continues to misconstrue Skillz's question, posed back on July 16, 2024, of whether Voodoo is currently using bots; Skillz asked that of Voodoo as it considered whether to move for a preliminary injunction and expedited discovery. ECF No. 24 ¶ 4. As detailed in the Declaration of Craig Carpenito, Voodoo declined to respond. *Id.*

[2] Voodoo argues that the redactions were necessary to prevent the disclosure of source code. *See* Letter at 3 n.3. But even a cursory review of the level of redactions, comprising almost every heading and entire consecutive pages, calls that assertion into question. *See, e.g.*, ECF No. 71-1 at 4–6, 13–29.

[3] Voodoo once again misinterprets the meaning of "zero sum game" as requiring only two market competitors. *See* Opposition at 18 n.10 (ECF No. 74 at 25 n.10). Similarly, Voodoo also continues to misclassify Skillz's role as a direct competitor of Voodoo. *See id.* at 21–22 (ECF No. 74 at 28–29).

October 31, 2024
Page 3

Expedited Discovery and a Preliminary Injunction), all of which are focused on the issue of Voodoo's past and present bot usage. *See* ECF No. 51-1. The depositions sought as part of the requested expedited discovery, too, are tailored to Voodoo's bot use and impact on Skillz. *See* ECF No. 51-2. Furthermore, Voodoo's argument that "dismissal of Voodoo SAS for lack of jurisdiction would eliminate the need to obtain discoverable information from one of the defendants, which is a foreign entity," is inconsequential. *See* Letter at 3.[4] In its Opposition, Skillz explained that the Court can exercise personal jurisdiction over Defendant Voodoo SAS pursuant to four separate theories. *See* Opposition at 5–12 (ECF No. 74 at 12–19). Even if the Court were to rule that it does not have personal jurisdiction over Voodoo SAS, the Court indisputably has jurisdiction over Defendants Esport Newco SAS, a French entity, and Esport Newco US Corp. *See id.* at 12 (ECF No. 74 at 19). Given that the Defendant entities operate as alter egos and agents of one another, *see, e.g.*, *id.* at 10–11 (ECF No. 74 at 17–18), it is almost a certainty that the discovery sought from Voodoo SAS and Esport Newco SAS would overlap significantly. Therefore, this factor also weighs against a stay.

Finally, Skillz would suffer great prejudice if a stay is granted. Skillz has filed a motion for expedited discovery in conjunction with its motion for a preliminary injunction precisely because haste is especially appropriate in false advertising and other Lanham Act cases. *See* 28 U.S.C. § 1657(a) ("[T]he court shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief[.]"); Fed. R. Civ. P. 26(d), advisory committee's note on the 1993 amendments (noting that Fed. R. Civ. P. 26(d) specifically authorizes the Court to allow discovery on an expedited basis, including in cases involving requests for a preliminary injunction). The evidence Skillz has adduced to date indicates that Voodoo is wrongfully manipulating the outcome of its games via bots and algorithms, and in doing so, lying to consumers and harming Skillz. Courts routinely order expedited discovery in false advertising and other Lanham Act cases, as the threat of irreparable harm is at stake and will only deepen over time. *See, e.g.*, *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 334, 335 (S.D.N.Y. 2008); *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 348 F. Supp. 2d 165, 169 (S.D.N.Y. 2004).

For these reasons, Skillz respectfully requests that the Court deny Voodoo's request for a stay of discovery.

Respectfully submitted,

*/s/ Craig Carpenito*

Craig Carpenito

cc:   All Counsel of Record (via ECF)

---

[4] In the *Papaya Gaming* case, Judge Cote recently and resoundingly rejected Papaya Gaming's arguments that Israeli data protection law shielded Papaya Gaming's Israeli arm from discovery. *See Skillz Platform Inc. v. Papaya Gaming, Ltd.*, 2024 WL 4471684 (S.D.N.Y. Oct. 11, 2024). Any similar argument by Voodoo would fail.