June 8, 2026

**VIA ECF**

Honorable Jennifer E. Willis, United States Magistrate Judge

Re: *Skillz Platform Inc. v. Voodoo SAS, et al.*, No. 1:24-cv-04991 (S.D.N.Y.)

Dear Magistrate Judge Willis:

In compliance with Your Honor's April 9 (ECF No. 209) and May 12 (ECF No. 230) Orders, the Parties write jointly to provide this Court with an update on the status of discovery and any anticipated discovery disputes that require Court intervention.  The Parties met and conferred on the issues in this letter for 1 hour on June 8, 2026.  Time indications for each issue from the June 8 meet and confer are in parenthesis below; other meet and confer sessions are noted in the text of the letter.

**Skillz's Positions:**

### 1. Skillz's May 11 Motion to Compel (ECF No. 229) (10 mins.)

Discovery continues to move at an unacceptably slow pace. On May 4, 2026, the parties met and conferred for thirty minutes regarding Voodoo's responses and objections to Skillz's Fourth Requests for Production ("RFPs") and Second Requests for Admission ("RFAs") concerning 41 Blitz Win Cash App "player" usernames that Skillz has reason to believe are associated with Bots. Skillz filed a Motion to Compel responses to these requests on May 11, which is now fully briefed before Your Honor. ECF No. 229.

Voodoo refuses to produce evidence of whether or not the specific players that Skillz identified are Bots or human players, on the basis that several of Skillz's requests *could potentially* be interpreted to encompass noncash games in addition to cash games. Not only is this interpretation incorrect—Skillz's requests on their face only seek documents relating to specific "players" of Voodoo's real-money, skill-based games—but Skillz expressly agreed during the meet and confer that Voodoo would not need to search for documents implicating noncash games.[1] Voodoo's insistence that Skillz re-serve narrowed requests—thereby delaying discovery of this important evidence for another 30 days (or until this motion is decided) is unnecessary and improper. Furthermore, Voodoo's refusal to respond to RFA 49—which asks whether certain listed usernames were "human"—on the basis that it calls for information regarding noncash games suggests Voodoo cannot otherwise deny these players are non-human Bots.

Skillz expressly requested that Voodoo admit or deny whether 41 separate players on its Blitz Cash App were "a Bot" or "not a human" *See, e.g.,* ECF No. 229-3, RFAs 48, 49.  A separate admission or denial "for each" of the 41 listed usernames is required. Instead, Voodoo simply denied the entire RFA. During the meet and confer, Voodoo's counsel refused to confirm whether

---

[1] Voodoo argues that Skillz previously objected to certain Voodoo requests on a similar basis, but that argument is unavailing; those Voodoo requests affirmatively sought only information about irrelevant, noncash games, and there was no way to interpret them to only cover cash games. *E.g.* RFA No. 63 ("Admit that Skillz permits the use of bots in non-cash games played through the Skillz Platform"); RFA 152 ("Admit that bots deployed in non-cash games on Skillz Platform has an impact on players' win rates.").

June 8, 2026
Page 2

the blanket denial meant that *each and every* listed player was a Bot.

Skillz additionally renews its request (ECF No. 229) that Voodoo produce documents responsive to 28 Requests going to the core of this litigation from Skillz's first two RFPs, including regarding outcomes of Blitz Win games involving Bots, tournament hosting statistics, investor disclosures, and competitive standing analysis, which Voodoo continues to obstruct despite initial representations that they would produce. In its Response (ECF No. 234), Voodoo asserts it "produced thousands of documents that include the word 'bot' or similar terms," but does not (because it cannot) assert that it searched for documents based on the Court's Bot definition including on words such as "opponent," which Skillz identified as a potential Bot code name. Accordingly, Skillz respectfully requests that the Court order Voodoo to provide its custodians and search terms for auditing.

Finally, even though in November this Court Ordered that the parties "provide monthly privilege logs regarding redactions to opposing counsel" (ECF No. 146 at 2) Voodoo has failed to produce a *single* privilege log, even despite objecting to certain requests on the basis of privilege. Skillz appreciates the Court's attention to this Motion as Voodoo continues to withhold essential documents that Skillz requires prior to the commencement of depositions.

> Defendants' Response:

Skillz's motion to compel (ECF No. 229) is fully briefed before Your Honor. The Court should disregard Skillz's improper reply arguments. On the merits, Defendants respectfully refer the Court to their Response (ECF No. 234), which demonstrates that Defendants have acted in good faith throughout the discovery process, and are continuing to search for any responsive documents. As set forth in that Response, Defendants' objections to the Fourth RFPs and Second RFAs are well-founded. Regarding search methodology, Defendants in good faith will use the term "opponents" to search for any responsive documents.

As to privilege logs, Defendants have not provided a privilege log because, to date, Defendants have not withheld responsive documents on the basis of privilege. Defendants are reviewing documents in light of the Court's April 9, 2026 Order (ECF No. 209) and will log any privileged documents accordingly.

## 2. Compel Responses to Skillz's 3rd and 5th RFPs, 2nd ROGs, 1st RFAs (10 mins.)

Voodoo has promised to produce various other items, all of which remain pending to date. Specifically, following an hour-long meet and confer on May 22, Voodoo stated that in addition to producing the documents it had already agreed to produce in response to Skillz's RFPs (including, among other things, its legal opinion letters to financial institutions and App stores that the Court directed Voodoo to produce following the April 8 conference), it would (1) submit a verification of its interrogatory responses signed under penalty of perjury by an individual from each Defendant entity as required under the Federal Rules; (2) supplement its response to Skillz's Interrogatory No. 9, which requests names of Voodoo's system, code, process, algorithms, or software responsible for matching any human player against any Bot developed or used by Voodoo in the Blitz Win Cash App; (3) send Skillz a privilege log (which as noted above would be the first

June 8, 2026
Page 3

one produced by Voodoo to date); (4) provide an explanation for slack chains indicating that certain messages containing the word "Bot" were improperly deleted following the commencement of this lawsuit; (5) produce the game log data underlying the Bulletproof report; (6) produce any document destruction or retention policies in effect during the period relevant to this lawsuit; and (7) produce documents regarding how customer deposits and payments are processed for Blitz. All of these issues remain outstanding. As communicated to Voodoo, if it does not make good on these promises by June 3, Skillz reserves the right to move to compel.

During the same meet and confer, Skillz and Voodoo could not agree on certain discovery requests, for which Skillz plans to file a motion to compel. Skillz will seek to compel responses to: (1) **RFPs 35-37**, seeking Voodoo player complaints regarding the same issues as Voodoo's requests for Skillz player complaints, which this Court has already explicitly deemed responsive (Dec. 15, 2025 Hr'g Tr. at 33:9–34:19; and (2) **RFPs 47-51, 58**, seeking organization charts, corporate governance documents, board meeting minutes, inter-defendant agreements concerning the Blitz Win Cash App, etc., for all three Defendant entities, including Voodoo SAS (which is particularly critical given Voodoo's claims that Voodoo SAS does not belong in this lawsuit, even though Skillz has alleged multiple connections between Voodoo SAS and the Blitz app).

Defendants' Response:

Defendants are evaluating providing supplemental responses to Skillz's Interrogatories and will provide supplementations and verifications as soon as possible.  Regarding Defendants' Slack messages, Skillz has absolutely no basis to assert that any messages containing the word "Bot" were improperly deleted.  Defendants preserved Slack channels pertaining to the Blitz Win Cash App ("Blitz App") development and operation when this lawsuit was filed, and then performed an extraction for fact discovery.  In their review for responsive documents, Defendants' searches included the term "bot" and in an effort to be transparent, Defendants produced documents from the extracted Slack channels containing that term, even if the only mention of "bot" was merely an irrelevant, non-responsive auto-generated IT alert (which is called a "bot message") in the channel.  To be clear these "bot messages" have nothing to do with using bots in cash games. Some of those "bot message" alerts are indications that a participant's message within that Slack channel was deleted because it timed-out (prior to when Defendants extracted that Slack channel for their document collection).  For example, third party participants in some Slack channels may allow their messaging to time-out, which Defendants cannot control.  Defendants are conducting an IT review to determine whether additional information can be retrieved, notwithstanding that Defendants have no reason to believe that any messaging underlying those auto-generated IT alerts is responsive.

Regarding the Bulletproof game log data, Defendants obtained those logs from  Bulletproof last week and are filtering out non-cash game log entries.  Defendants will produce the cash-game logs as soon as possible. Defendants are continuing to search for any document retention policies and will produce non-privileged documents, if any exist, containing that information.  On June 5, 2026, Defendants produced documents sufficient to show that Esport contracts with a payment processor for the Blitz App.

Defendants offered to produce charts for personnel involved in the design and development

June 8, 2026
Page 4

of the Blitz App (RFP No. 48), which is proportional to the needs of this case, notwithstanding the fact that Skillz refused to produce organization charts for those involved in marketing the Skillz Platform in response to Defendants' RFP No. 25; Skillz refused this compromise.  Regarding player complaints (RFPs 35-37), complaints about the Blitz App that are ***unrelated to bots*** are not relevant to Skillz's claims and production would be unduly burdensome.

### 3.   Hague Request for Ido Naim Deposition (0 mins.)

The parties have fully briefed their positions on Skillz's Application for Issuance of a Letter Request for International Judicial Assistance Pursuant to the U.K Evidence (Proceeding in Other Jurisdictions) Act of 1975, through which Skillz seeks to take the deposition of former Voodoo executive Ido Naim, a British citizen residing in London, England. Counsel exchanged emails on May 1, 2026 and discussed the matter during a telephonic meet and confer on May 4, 2026 (ECF 231). Given the lengthy Hague Convention process, Skillz respectfully requests that the Court issue the Letter Request at its earliest convenience.

Defendants' Response:

Defendants respectfully refer the Court to their Opposition (ECF No. 236).  Skillz's proposed topics are overbroad, and it is unfair to permit Skillz to obtain discovery from a foreign non-party while Defendants are precluded from taking basic discovery from Skillz.

**Defendants' Positions:**

### 1.   Scheduling Discovery Regarding Defendants' Affirmative Defenses; Request For a Further Extension of Discovery (10 mins.)

The June 12, 2026 deadline to complete written discovery and the July 24, 2026 deadline to complete depositions are quickly approaching.  Defendants have not yet scheduled fact depositions because Skillz either refuses or otherwise fails to produce documents that are plainly relevant for defending against Skillz's false advertising claim, as was further evident from Skillz's testimony at the *Skillz/Papaya* trial.  Moreover, for all of the categories of documents that Skillz refuses to produce (and that the Court has not compelled Skillz to produce if the categories pertain to affirmative defenses), Skillz's counsel will assuredly instruct its witnesses not to answer Defendants' questions if they are relevant to affirmative defenses.  By being forced to continue one-sided discovery without a ruling on the motion to dismiss, Defendants are being unfairly prejudiced in their ability to take critical discovery needed to defend against Skillz's claims.  *See* Nov. 4, 2025 Hr'g Tr. (ECF No. 149), at 204:9-15 (noting that discovery relevant to the unclean hands defense "isn't ripe" and is "premature" because "we don't have an answer"); *see also* ECF No. 170 (denying Defendants' motion to compel filed at ECF 153 except as to player complaints).

Defendants therefore request a further (and hopefully final) extension to the schedule for fact discovery to provide time to resolve Defendants' motions to compel and for Skillz to provide a fulsome production.  Defendants also reiterate their request for the Court's guidance on how Defendants will be afforded the opportunity to serve additional written discovery and take

June 8, 2026
Page 5

depositions on matters related to affirmative defenses should the Court deny the motion to dismiss leading to Defendants pleading those defenses.[2]

Skillz's Response:

Nothing prevents Voodoo from filing an Answer, counterclaims, and affirmative defenses right now other than Voodoo's own tactical choice to await a decision on their motion to dismiss. Skillz should not be put to the burden of a second discovery period based solely on Voodoo's litigation tactics, particularly where there is precedent from a substantially similar case—*Papaya*—in which a substantially similar motion to dismiss was denied, demonstrating the likely outcome.

Voodoo's request for an extension is a pretext to continue delaying its discovery obligations until a ruling on its motion to dismiss can be rendered. The Court explicitly ruled that discovery would not be stayed. Thus, Skillz respectfully requests that the Court order Voodoo to produce relevant documents by the end of June so that depositions may proceed in July in accordance with the current schedule. Skillz, on the other hand, has not withheld anything responsive from Voodoo other than privileged documents that have been properly logged. Voodoo claims that Skillz is withholding documents that plainly do not exist (as even the Court recognized on April 8), such as records of where each and every Skillz customer may have gone after departing the platform and why they might have left. Voodoo has all of Skillz's financial information and knows that this case will be proven through survey and damages expert analysis.

2. **Defendants Request a Discovery Conference and Consideration Of Their Pending Motions to Compel (ECF Nos. 203, 241)**

Defendants respectfully request a discovery conference and the Court's consideration of Defendants' pending motions to compel (ECF Nos. 203, 241).  Defendants' April 2, 2026 motion (ECF No. 203) was fully briefed but was not included in the April 8, 2026 hearing.  Defendants' May 22, 2026 motion (ECF No. 241) seeks discovery necessary to rebut Skillz's narrative and challenge Skillz's standing to bring its false advertising claims.

Skillz's Response:

Skillz agrees that several discovery disputes are ripe for resolution, including Skillz's motion to compel at ECF 229 and its Hague application at ECF 231. Skillz defers to the Court regarding the scheduling of a discovery conference, but, given the volume of disputes and the looming close of discovery, Skillz is willing to waive a conference and have the Court resolve these motions on the papers. Skillz is also willing to proceed with a telephonic discovery conference if that would assist the Court in the timely resolution of these disputes.

3. **Skillz's Continued Refusal to Produce Relevant Documents Requires Additional Motion Practice (30 mins.)**

---

[2] Defendants first raised this concern in their response to Skillz's motion for an extension of the discovery schedule (ECF No. 197) and then again in the May 6, 2026 joint letter (ECF No. 223).

June 8, 2026
Page 6

Defendants anticipate filing a motion to compel to address Skillz's continued refusal to produce relevant documents.  Defendants raised these issues in a previous motion to compel (ECF No. 184), during the April 8, 2026 discovery conference, in a May 19, 2026 letter, and during the May 22, 2026 meet and confer.  During that meet and confer, Skillz confirmed it would not produce documents responsive to RFP Nos. 49, 77, 79, and 80.  On June 3, 2026, Skillz served a letter confirming that it will not produce documents concerning player liquidity (RFP Nos. 41, 44), will rely only on public documents and incomplete spreadsheets for marketing/user acquisition and rake metrics (RFP Nos. 50, 51, 52), and will not produce documents regarding its statements about profitability without fair play (RFP No. 75).  Skillz agreed only to search for additional competitive analyses in response to RFP No. 70.  Accordingly, RFP Nos. 41, 44, 49-52, 75, 77, 79, and 80 are ripe for a motion to compel.

In addition, on June 1, 2026, Skillz served objections to Defendants' Fourth Set of RFPs, refusing to search for documents for numerous requests.  The parties met and conferred on June 8, 2026.  Defendants anticipate moving to compel on RFP Nos. 93-102, 105, 107, 108, 115-118, 120, 122, 126-130, 132-135, and if Skillz refuses to confirm it searched for and has no documents responsive to RFP Nos. 119 and 121, Defendants will move to compel on those as well.

<u>Skillz's Response:</u>

Skillz has already produced documents responsive to many of these requests.  Per a May 22 meet and confer and June 3 letter to Voodoo, Skillz also agreed to produce additional documents in response to a significant number of these requests. Specifically, Skillz will follow the Court's guidance from the April 8th discovery conference that backward-looking documents and communications reflecting actual knowledge and data are responsive and should be produced, but forward-looking guesswork is not. *See* April 8 Hr'g Tr. at 103:12–13 ("Prognostication, off the table; actual data, that is to be disclosed.").

Regarding Voodoo's Fourth RFPs, Skillz indicated at the June 8 meet and confer that it will stand on its objections to certain of Voodoo's requests, search for documents in response to certain of Voodoo's requests, and investigate whether any additional response or production is necessary in response to certain of Voodoo's requests.

As always, we appreciate the Court's time and consideration.

Respectfully,

*Lazar Raynal*

Lazar P. Raynal


*/s/ Harold Gordon*

Harold Gordon